Will the clerk please call the next case? 3-22-03-87 Ruben D. Walker and Stephen Diamond et al. Appellants versus Andrea Chasteen, Iris Martinez and class members 18 clerks et al. Appellees. Thank you. Mr. Cray, you may proceed. Good morning, justices. I am Daniel Cray and I'm here to provide argument for Ruben Walker and all class plaintiffs as appellant. When a court fee statute has been held facially unconstitutional in a case where plaintiffs sought the equitable remedies of one, a declaration of unconstitutionality and two, a return of only the fee taken from the plaintiffs under that statute. No such case under Illinois law has lost jurisdiction under sovereign immunity concerns. If the lower court's ruling of August 30, 2022 is affirmed, Walker would be the first such case. In my arguments before the court this morning, I will primarily discuss three cases. Raintree Homes versus Village of Long Grove, Cracker versus Finley and Parmar versus Madigan. First, the Raintree case. Understanding the distinct legal concepts between restitution and money damages under Illinois law is crucial to understanding the inaccuracy of the circuit court's ruling in this case. The Illinois Supreme Court decision of Raintree Homes versus Village of Long Grove explains these two important legal concepts and controls why the circuit court must be reversed. In Raintree, a builder brought suit against the Village of Long Grove and argued that payments by the builder of impact fees for each improvement to land it made in the village was unconstitutional and sought a return of the fees paid to the village. On the other hand, the village claimed protection under the local governmental immunity statute and sought to dismiss the case. The trial court dismissed the case, but the appellate court reversed. The Supreme Court noted in its decision that the immunity act allowed recovery other than for damages. So the Supreme Court took a close look at Illinois law and how Illinois law defined damages. Specifically, the Supreme Court needed to The Supreme Court clearly set forth in Raintree that where there is a return of fees taken under an unconstitutional fee statute, that restitution is not, I repeat, is not considered money damages or even damages under Illinois law. Now, quoting from the Raintree case, stated another way, plaintiffs requested relief of a refund may be properly designated as seeking an award of restitution. Continuing, the concepts of restitution and damages are quite distinct, but sometimes courts use those terms damages when they mean restitution. The damages award is not the only money award courts make. Courts may also award restitution and money. They may also order money payments in the exercise of equity powers. And quoting, damages differ from restitution in that damages is measured by the plaintiff's loss. Restitution is measured by the defendant's unjust gain. Payment of restitution by refunding back to plaintiffs their own money and only their own money provides specific equitable relief for an unjust gain and not damages for a past wrong. This is the holding of Raintree homes. So how does this distinction between restitution and money damages make a difference to the jurisdictional argument in our case related to sovereign immunity? Here's how. Whether sovereign immunity applies depends in part upon the type of relief sought. In our case, all equitable relief, declaratory, injunctive, and restitution, but no damages. Defendant intermeters each claim in their response briefs no matter what the defendants want to call the return of the class plaintiff's own money paid under the facially unconstitutional court fee statute. It is considered, quote, money damages, end quote, and therefore divest the circuit court of jurisdiction under the sovereign immunity act. And through this legally inaccurate statements, the defendants in this case convince the lower court that money is money and payment of money under all circumstances invokes sovereign immunity. As noted by the Raintree court in, I'm sorry, noted by the Supreme Court in Raintree, defendant intermeters myopic view that any award of money is considered recovery for a past loss is clearly incorrect under Illinois law. Restitution of the plaintiff's own money does not invoke sovereign immunity and does not lead to a loss of jurisdiction for law courts in Illinois. Again, in determining whether a lawsuit is won against the state of Illinois so that sovereign immunity might apply, one must look at, A, involve questions related to the constitutionality of add-on fee statutes required for access to the courts. The court of claims has no authority to hear constitutionally related issues. That's the Bennett versus state of Illinois case. Further, the court of claims has no jurisdiction to enter an injunction related to unconstitutional statutes. This means the court of claims had no jurisdiction over our case, the circuit court was the only court with jurisdiction to hear all parts of the constitutionality and related issues. Next, the second prong, whether relief sought divest the circuit court of subject matter jurisdiction, as seen in the Raintree case, restitution is not money damages under Illinois law. Restitution is money, but not damages or money damages. It is an equitable remedy which stops an unjust gain under an unconstitutional taking by the defendants in this case. The equitable remedy of restitution makes sense as it allows the plaintiffs who are victim of unlawful action of defendants in collecting fees under an unconstitutional fee statute, it allows these plaintiffs to be put back into the position that they were prior to the enactment of the unconstitutional statute. And under Illinois law, once there is an unconstitutional statute, it is treated as if it is void ab initio, or as it never existed. Restitution is the only way to fulfill the mandate of Illinois law that the parties affected by a facially unconstitutional statute must be returned to the same position they were in before they encountered the facially unconstitutional statute. In its 2021 decision in our Walker case, the Illinois Supreme Court relied on the factually and legally aligned case of Crocker v. Finley. Crocker is helpful to this court in reviewing how the Crocker court treated the class plaintiff's request for a return to the unconstitutional add-on court fees. And when the court determined its jurisdiction, the Supreme Court did not find that the Illinois judicial system lost jurisdiction because of sovereign immunity. The facts of Crocker are virtually identical to those of Walker. There, like in Walker, the legislature forced Illinois citizens to pay unconstitutional add-on court fees for a social program unrelated to the court system. As with Walker, the lower court made a determination that these statutes were unconstitutional. The trial court in Crocker also ordered a trustee to prepare a plan of refund restitution of all fees back to the class plaintiffs. The court stayed the implementation of the refund program under the direct appeal to the Supreme Court and after it was decided. The Illinois Attorney General and others appealed the decision of the finding of unconstitutionality in Crocker. At the time Crocker went to the Illinois Supreme Court, it was clear from the orders entered in the circuit court but stayed that the trustee was given a mandate to provide a program allowing a refund of fees to the class plaintiffs. At no time did the Crocker defendants, including the people of Illinois through the Illinois Attorney General, ever assert that the refund or restitution of fees back to the plaintiffs in sovereign immunity and led to a loss of jurisdiction by the judicial courts. More importantly, and as this court knows, Illinois courts are duty-bound to determine the issues of jurisdiction, even sui sponte, if necessary. A reviewing court must determine the fulfilled its duty of determining jurisdiction when it decided the Crocker case. Based upon case precedent that fees are to be returned after a finding of facial unconstitutionality of a fee statute, when the Supreme Court in Crocker remanded the case back to the circuit court for further proceedings, the Supreme Court and parties had to understand the only remaining significant issue in the lower court was to complete the program for distribution of the refunded fees to the plaintiff's class. The Crocker court would not have remanded to the circuit court unless it believed the circuit court had jurisdiction to complete the program to refund fees to the class plaintiffs and make those plaintiffs whole. The program for restitution of fees in Crocker by order of the circuit court is exactly what should have been provided by the trial court to Ruben Walker and the other class plaintiffs under case precedent. But due to the circuit court's misunderstanding of the legal distinction between restitution and money damages in a matter involving facially unconstitutional fee statutes, the court inaccurately ruled that sovereign immunity eliminated its jurisdiction to order restitution. Let me now address the case of Parmar versus Finley, which finds its way into everyone's briefs in this case. The discussions of the Illinois Supreme Court in Raintree that restitution slash refund slash owned money paid under an unconstitutional fee statute are not to be considered money damages under Illinois law makes the decision in the Parmar versus Madigan case easier to understand. The correct understanding of the ruling of Parmar is particularly important given the defendant's continued misapplication of the true nature of the holding in Parmar. The basis for the holding in Parmar versus Finley was that the plaintiff sought a remedy against the state beyond a simple restitution and therefore the lower court and the Supreme Court determined that sovereign immunity applied. Unlike in Raintree or in Crocker, the Parmar plaintiff did not seek a simple refund but sought a refund along with interest and loss abuse damages and this is important. Once the plaintiff sought interest and loss abuse remedies, he had now sought what Illinois law defines as damages or money damages. The plaintiff in Parmar did not ask for only his money back as his sole monetary remedy as my clients did in Walker but instead sought money in terms of interest and loss abuse which is not merely providing your own money back but is asking for separate funds of the state which invokes sovereign immunity. Interest and loss abuse damages which are subject to sovereign immunity and this fact explains why Parmar case was decided the way it was. Humbly, Parmar did not break any new ground in the area of sovereign immunity as defendants argued. As noted in our reply brief, defendant's citation of cases which were subject to a loss of thread which was they dealt with claims of remedy beyond mere refund of money paid under a facially unconstitutional statute. Parmar does not hold that a request for refund of fees only implicate sovereign immunity and if it did so, then the Supreme Court would have clearly made mention that they had just overruled Raimtree and other similar cases. Mr. Cray, the red light is on. Your time is up. You will have time in reply. Thank you, your honor. I have finished this argument this morning. Thank you. Thank you. Mr. Griffiths, you may respond. Good morning, your honors. May it please the court. Assistant Attorney General Carson Griffiths on behalf of the 18 clerks. I want to begin by emphasizing that there's no real dispute in this case that plaintiffs' claims implicated the doctrine of sovereign immunity. The circuit court clerks are state officers. Plaintiffs sought to hold them liable for carrying out their official duties and collecting a mortgage foreclosure fee as required by statute and remitting that to the treasury and plaintiffs conceded in the circuit court that they wanted a $102 million judgment drawn from the state treasury. This is the quintessential case for the application of sovereign immunity and the only question is whether plaintiffs can invoke an exception to that doctrine. And the only recognized exception that they seem to draw on is the officer suit exception in arguing that a alleged constitutional violation may escape sovereign immunity. But Parmar makes abundantly clear that such a claim only allows a plaintiff to seek prospective injunctive relief in circuit court, not retrospective monetary relief. And plaintiffs undoubtedly sought retrospective monetary relief. In fact, they sought the same exact relief virtually as the plaintiffs in Parmar. In Parmar, the plaintiffs sought a refund of all monies paid and in this case, plaintiffs sought the return of all fees collected. So plaintiffs are incorrect in arguing this morning that there's some exception to sovereign immunity for the return of money paid by a plaintiff pursuant to an unconstitutional statute. Didn't they ask for a notion that plaintiffs can escape the doctrine of sovereign immunity by simply labeling their claim as restitution versus damages is wrong. Again, no case in this court or the Illinois Supreme Court has ever recognized an exception to sovereign immunity for restitution. Again, the distinction is between prospective injunctive relief and retrospective monetary relief for a past wrong. That is how the officer suit exception is defined. And plaintiffs' reliance on rain tree homes, in fact, supports defendant's position in this case. Oh, you're saying, so the prayer for relief between those two cases, the present case in Parmar, were exactly the same prayer for relief? Not exactly the same, Your Honor. I recognize that Parmar plaintiffs sought interest in loss of use as well, but the portion of the complaint seeking return of fees is virtually identical. And again, I want to emphasize that this attempt to relabel what is a claim for retrospective monetary relief and call it restitution, you can call it damages, you can call it whatever you want, but what they want is relief for a past wrong. That is what Parmar made abundantly clear is barred by sovereign immunity. So turning to this notion that the distinction in the prayer for relief in both complaints is meaningless? It is. It is meaningless, yes. Because again, the key is, are you seeking money for a past wrong or prospective relief prohibiting illegal future conduct? Plaintiffs already got their injunctive relief in this case. Now they want the past wrong remedied. And there's no authority for that. I want to address the rain tree homes decision because plaintiffs have relied on it heavily today. That shows that sovereign immunity applies here. Rain tree homes was a case brought against a municipality. The Local Governmental Tort Immunity Act applied to that, not the State Lawsuit Immunity Act. And under the Local Governmental Tort Immunity Act, it expressly allows plaintiffs to seek relief other than damages. That's a quotation. Relief other than damages is available. So the Illinois Supreme Court held restitution is not damages, you can seek it. Here we have the State Lawsuit Immunity Act that says the state of Illinois shall not be made a defendant or party in any court full stop. There's no exception for damages. It doesn't expressly say damages or restitution in there. It is only cabined by the recognition of the officer's suit exception, which again, even when plaintiffs are alleging a constitutional violation, you can only go to circuit court and invoke that exception to seek an injunction or a declaratory judgment. Now turning to Crocker, plaintiffs misconstrued that case. First, on the issue of ordering an accounting or anything like that. Crocker was a direct appeal to the Illinois Supreme Court under Rule 302. It didn't discuss sovereign immunity. It didn't discuss that circuit court order appointing a trustee. And the Gonzalez case cited in our brief makes abundantly clear that this court should not imply rulings on jurisdiction into Illinois Supreme Court precedent when it's silent on that issue. So Mr. Cray's assertion that the Illinois Supreme Court must have considered the sovereign immunity principles and found them to be lacking is just incorrect under Gonzalez. Also, Crocker is meaningfully distinguishable because in Crocker, plaintiffs only sought prospective relief. So it would invoke the officer's suit exception. First, they sought a declaratory judgment that the fee was invalid. Also, the statute imposing the fee in Crocker was effective January 1, 1982. Plaintiffs filed a lawsuit that same month before fees had been collected and sought and obtained a temporary restraining order. The opinion states they temporarily restrained the clerks from transmitting that fee to the treasurer. Again, prospective injunctive relief. Plaintiffs didn't exercise that kind of diligence here. They filed their lawsuit. They didn't seek a preliminary injunction. In fact, at page 452 of the common law record, they expressly disavowed a claim for a preliminary injunction in this case, allowed the circuit courts to continue collecting the fee as they were required to do by law, and now want to collect damages for a past wrong. That's simply not how the doctrine of sovereign immunity should work, and that's certainly not what the plaintiffs in Crocker did. So you're equating damages with restitution now? No. May I answer your question? I don't see my time is expired. Yes, please. I am not equating restitution with damages. They are distinct legal concepts. The distinction is meaningless when it comes to the application of sovereign immunity. The key question is whether you're seeking monetary relief for a past wrong, prospective relief for a future wrong. That is what Parmar held, and this court is bound by Parmar. Thank you. Thank you, Mr. Griffiths. Mr. Piles, you may respond. May it please the court, Assistant State's Attorney Scott Piles on behalf of the class representative, Andrea Chasteen. Justices, I think it's relatively clear. The plaintiff in this case is relying heavily on rain tree, and we have to draw a distinction between the law, the immunity that's afforded in rain tree that's discussed, which is a local governmental tort immunity act, and it draws a distinction between the damages and restitution. And it's because in the local governmental tort immunity act, it talks about that things are money damages. And that's where the argument or the plaintiff is attempting to drive their case using rain tree. But rain tree doesn't have any application because rain tree involved the local governmental tort immunity act, and we're here talking about sovereign immunity. And in sovereign immunity, and the plaintiff has already conceded these two facts. Number one, they are seeking a judgment against the state of Illinois. Presumably, if this court were to remand the case to the circuit court for damages, we're going to be put into a situation where the circuit court is going to be mandating a straight treasurer in garnishments, orders that they turn over documents, orders involving state funds. And the plaintiff in their nearly citation free argument can point to one case, one, where there was a class action involving an unconstitutional fee, where the court, the Supreme Court remanded the case back to the trial court for damages. Now, he relies heavily on Crocker, but in Crocker, the money in that case had already been set aside, and there had been a trustee put into place, and the money was not going to come from the state, it was going to come from a segregated account that had been established early on in the case. That we draw a distinction between Crocker and what happened here. There was no trustee set up, there was no money sent down to the straight treasurer to be segregated for later distribution under something, for example, the Protest Monies Act. That was not done here. And that's the difference between this case and Crocker. Plaintiffs did not pursue those avenues. They talked about the constitutionality of the case. And he references in his argument that in no case has there ever been from an unconstitutional fee to the money. Cases are bifurcated all the time for different claims. For example, if there's a jury demand on some issues, and there are equity issues within the same case, two different courts and two different fact finders take care of those matters. In essence, in this case, nobody is suggesting that the plaintiff cannot get back their fees. The real issue is, where does the plaintiff have to go to get those fees? And in this particular case, their avenue is the Court of Claims. Now the Court of Claims handles all, has the exclusive jurisdiction over any monetary claim that's being made against the state. And I would refer to the court to the plaintiff's arguments in the report of proceedings at page 255 through 257. They admit they are seeking money from the state treasurer. They also conceded that the defendants in the case, the circuit clerks, are state officers. This is a textbook example of the application of sovereign immunity. There is no exception that the plaintiffs talked about that applies in this case. It's very pure and simple. The Littoral case, which is referenced by the plaintiff talking about the application of an equitable remedy, again, that was prospective, going to the future relief, not a receipt of money that had been paid in the past. We're talking about $102 million that the plaintiffs are seeking here. And where's the best place for that to go? Obviously, that money's not been set aside, and the plaintiffs conceded in the case that the money has already been spent in the Abandoned Lands Act as pursuant to the unconstitutional statute. The money is gone. In the Court of Claims, if there's an award made, the state legislature can appropriate the money based on that award. It seems to be a lot cleaner in this particular case, considering sovereign immunity for it to go to the Court of Claims. Now, in their briefs, the plaintiffs talk about the fact, well, this would overwhelm the Court of Claims. No, it wouldn't. As made clear in our brief, for example, in Marion County, there were 1,500 claims or fees paid. Almost half of those were made by simply five different banks. Five different cases can be brought, and they can list all of the claims under a joint stipulation. It would not overwhelm the Court of Claims. The plaintiffs would be able to get their fees back if they had filed in the Court of Claims, and then they would be made whole. The arguments that somehow that being sent to the Court of Claims is somehow impacting the plaintiff's ability to receive that money is a misdirection by the plaintiffs. Simply said, the plaintiffs can get their money. They've had the ruling on the constitutionality. The circuit court has done their job. Now, it's time for the Court of Claims to refund the folks, if they're eligible, to be refunded their money pursuant to Illinois state statute. We ask that you reaffirm the ruling of the trial court dismissing the claim. Thank you very much. Thank you, Mr. Piles. Mr. Dwyer, you may respond. May it please the Court. First of all, as you know, we adopted the 18th Clerk's Brief, and we echo their arguments here today, as well as Mr. Piles' argument on behalf of Will County, the Will County Circuit Court Clerk, particularly with regards to Raintree Homes, a case that I'm very familiar with. As your Honor is aware, the Local Tort Immunity Act is not at all the same concept or statute as the sovereign immunity provisions set out. If the General Assembly wanted to change the sovereign immunity statute, it could have. That language is simply different, and the analysis is simply different. As Mr. Griffiths and Mr. Piles say, the real analysis is based upon the issues raised and the relief sought, and the way that you determine that is simply, in my opinion, whether you look retroactive relief or prospective relief. The Illinois Supreme Court in 2021 already dealt with the prospective relief from the injunction, which Judge Anderson below kept in place. You may be aware, from the record, the county stopped collecting those fees because of the injunction. Therefore, we're left with the retroactive relief. I just want to underline some very basic principles that I know the court is aware of, but it's worth echoing because it really comes down to the statutory interpretation. As you know, sovereign immunity comes from the Illinois Constitution. The plain language of the act itself says, except as provided in the Court of Claims Act, the State of Illinois shall not be made a defendant or party in any court. Now, our name is Cook County, obviously, but the wrinkle here, and that's statutory law, is we are acting as state agents. We are the state, and that was confirmed and conceded below by the plaintiff. We are the state as are the 102 circuit court clerks from around the state. We all have to follow the same statute. We all have to follow the Illinois Clerk of Courts Act. That proposition was confirmed by the Illinois Supreme Court in Drury v. McLean. Pursuant to that, there's no dispute that we acted according to our duties in collecting almost $46 million and sending 98% of the money down to the state treasurer. In effect, as you're aware, the Illinois treasurer was not named below. They're effectively the one that will be the ones that actions are controlled by potential monetary relief here. We can't control the action of the state treasurer as much as plaintiffs can, so the relief sought is totally against whatever the intention was by the legislature as distinguished from the Mortuary Immunity Act because the General Assembly gets to decide who controls the state coffers, and as Mr. Pyle said, that money's already gone for the original act. Thank you. Okay, thank you, Mr. Duar. Mr. Cray, you may reply. Yes, Your Honor. Seeing Attorney Pyle's mention that no attempt was made to set aside fees is interesting because he's in Will County and he knows that there were over $700,000 of fees that the record was kept in Will County and still remains in Will County because the plaintiffs attempted a protest fund which the circuit court only allowed Will County to have, so Will County has fees. Mr. Duar also knows that Cook County still has some fees because when the case allowed an enjoining of the statute, there were still some fees in the possession of Cook County, so we did make an attempt to do that, but more importantly, plaintiffs say, well, we can just go ahead and return to the Court of Claims, but in their briefs, Your Honor, they note that they believe there's statute of limitations arguments against our claims in the Court of Claims. Further, we have a class action. You're right. There's $102 million. There's over 200,000 separate claims. Just dividing the largest amount could be paid in any one case of add-on fees, which is $500,000. Dividing that into $1.2 million notes there to be over 200,000 claims. The Radke case in the Court of Claims says each individual claim has to be made in the Court of Claims. You can't pool them together as they suggest, or certainly, these attorneys here before you can't suggest what the Court of Claims is going to do. They have no control over the Court of Claims. The Court of Claims is a legislative branch. It's not a court. It's an administrative branch. The legislature were the ones that had the audacity to put the social program unconstitutional fee on the books. We're now going to go back to an administrative body of the legislative branch. Again, the Court of Claims has no authority to handle class actions. That's the Radke case. The judicial courts here have little to no oversight over what the Court of Claims does. We chose the judicial courts and have a right to be in this court unless there is no jurisdiction in the judicial courts. The judicial branch of government is empowered and are required to look over the other two branches of government as they did in this case. The Court of Claims has no such mandate and clearly would be beholden to the legislative branch. So, Your Honor, if you do what they want you to do in Parmar, really no one in this case has an ability to make a ruling because they suggest that Parmar stands for the fact that there is, in fact, a need to look at the jurisdiction. In Parmar, you do it before constitutional issues are decided. So, if that's the case, then no law court, because they all lose jurisdiction under Parmar in these constitutional cases, ever decides constitutional issues. And we know that no Court of Claims has jurisdiction to determine constitutional issues. So, what will happen in the future, according to what they say, under the Parmar holding, fee-challenged cases will remain in legal limbo. They'll never be decided because law courts don't have jurisdiction and Court of Claims doesn't have jurisdiction to determine the constitutionality of any law. So, that makes no sense, Your Honor. For that reason, the Circuit Court ruling should be reversed. Okay. Does that conclude your argument, Mr. Cray? It does, Your Honor. Thank you. Okay. Questions from the Court? No. I don't have any. They hit on the things that I would have asked about. Okay. Very good. Well, thank you, counsel, all, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. At this time, the clerk of our court will escort you out of our remote courtroom and we'll proceed to conference. Thank you.